# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION
*Electronically Filed*

| | | |
|---|---|---|
| AARON M. MUHAMMAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:14-cv-0087-RLY-WGH |
| | ) | |
| JEFFBOAT AMERICAN COMMERCIAL | ) | |
| LINES, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF KATHY WATSON

I, Kathy Watson, having been duly sworn, do hereby make of my own personal knowledge the following statement:

1.     I am over 18 years of age and competent to testify to the matters contained herein.

2.     I am the Benefits Administration Manager for American Commercial Lines Inc. ("ACL"), a parent company of Jeffboat LLC ("Jeffboat").

3.     As the Benefits Administration Manager, I am responsible for compliance with federal laws and regulations with respect to ACL's health and welfare plans, as well as the defined benefit and contribution plans.

4.     As a fiduciary of the American Commercial Lines LLC Pension Plan, of which the Jeffboat Hourly-Rated Employees' Pension Plan ("the Plan") was merged on December 21, 2005, I maintain all company records pertinent to the Plan and ensure benefits determinations are made in accordance with the Plan documents.  A true and accurate copy of the Plan in effect at the time of Plaintiff's separation is attached hereto as Exhibit 1.

5.     In my capacity as Benefits Administration Manager, I am also the records custodian for Jeffboat's valuation books, which are compilations of all employees' hours worked at Jeffboat.

6.     The valuation books are used to verify employees' "service," as well as "credited service," and to make benefits determinations under the Plan.  ACL maintains these books in the ordinary course of business.

7.     Plaintiff was sporadically employed at Jeffboat during the period of July 17, 1972 to November 16, 1984, when he was laid off, along with many other employees, in connection with a reduction in the workforce.  Plaintiff's recall rights under the collective bargaining agreement expired on May 17, 1988.

8.     At all times during his employment, Plaintiff represented that his legal name was Aaron Keith Moore, and all of Jeffboat/ACL's records reflect the same.

9.     As a Jeffboat employee, Plaintiff was a participant in the Plan.

10.     According to the valuation books, at the time of Plaintiff's separation from Jeffboat on November 16, 1984, he had a total of 4.1 years of credited service under the Plan.  Under the Plan, credited service is only earned during periods of actual work or for work hours which the employee was compensated.  Plaintiff has never disputed ACL's records regarding the same.

11.     Furthermore, Plaintiff has not accrued any additional years of credited service at any time after his employment with Jeffboat ended.

12.     Pursuant to the Plan in effect on November 16, 1984, employees needed 8.5 years of credited service in order to become vested in the Plan.  In order to be eligible for benefits

under the Plan, an employee must have been vested at the time a claim for benefits is made. Accordingly, Plaintiff is not entitled to any benefits under the Plan.

13.     Plaintiff participated in a class action lawsuit filed against Jeffboat in 1977, alleging that Jeffboat discriminated against its African-American employees in all aspects of the employment relationship.

14.     The lawsuit settled on November 12, 1993, and Plaintiff received a lump sum award as a result of the settlement.

15.     In order to calculate the amount of settlement proceeds that each class member received, every class member was deemed, solely for the purpose of calculating the settlement payment, to have "one year" for each year during which the class member had worked at least one day.  The lawsuit and settlement in no way altered the benefits or features of the Plan.

16.     In July 1994, following Plaintiff's separation of employment, he retained an attorney and made a claim for disability benefits under the Plan.

17.     During the course of communications with Plaintiff's counsel, it became apparent that Plaintiff mistakenly believed that the way in which settlement benefits were calculated in the class action lawsuit was the same way in which his years of credited service would be calculated under the Plan (i.e., Plaintiff believed that as long as he worked one day out of the year, he would be credited with a full one (1) year of service under the Plan).

18.     On September 1, 1994, for the same reason Plaintiff is not entitled to retirement benefits, the Plan denied Plaintiff's claim for disability benefits was denied because he did not have the 8.5 years of credited service necessary to become vested in the Plan.  Plaintiff never appealed this determination.

FPDOCS 30158982.1

19.     In September or October 2013, Plaintiff contacted me regarding his eligibility for retirement benefits under the Plan.

20.     On October 10, 2013, I mailed Plaintiff a copy of a letter that was previously sent to Teamsters Local 89 on April 12, 2000 explaining that Plaintiff was not entitled to disability or retirement benefits under the Plan as he did not have sufficient credited service to become vested in the Plan.  A true and accurate copy of the letter is attached hereto as Exhibit 2.

I, Kathy Watson, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

_Kathy Watson_
KATHY WATSON

STATE OF INDIANA                    )
                                    )
COUNTY OF _Clark_                   )

Acknowledged, subscribed and sworn to before me on this _3_ day of _Oct_, 2014, by Kathy Watson, Affiant herein.

My commission expires: _____

> FRANCES A. PARRELLA
> Clark County
> My Commission Expires
> April 24, 2016

_Frances A. Parrella_
NOTARY PUBLIC

# EXHIBIT 1

JEFFBOAT
HOURLY-RATED EMPLOYEES'
PENSION PLAN
(AMENDED AND RESTATED
EFFECTIVE JANUARY 1, 1984)

JEFFBOAT
HOURLY-RATED EMPLOYEES'
PENSION PLAN
(AMENDED AND RESTATED
EFFECTIVE JANUARY 1, 1984)

TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| I | TITLE | 1 |
| II | DEFINITIONS | 2 |
| III | MEMBERSHIP IN THE PENSION PLAN | 10 |
| IV | MONTHLY RETIREMENT INCOME | 11 |
| V | OTHER BENEFITS | 16 |
| VI | ADMINISTRATION OF THE PLAN | 18 |
| VII | CONTRIBUTIONS BY THE EMPLOYER | 20 |
| VIII | THE TRUST FUND AND TRUSTEE | 21 |
| IX | RESERVATION OF RIGHTS BY THE EMPLOYER AND LIMITATIONS ON RIGHTS OF MEMBERS | 22 |
| X | AMENDMENTS | 23 |
| XI | PERMANENT OR TEMPORARY DISCONTINUANCE OF THE PLAN | 24 |
| XII | ACTUARY | 26 |
| XIII | CHANGE IN EMPLOYMENT | 27 |
| XIV | MISCELLANEOUS | 28 |
| | SIGNATURES | 35 |

JEFFBOAT
HOURLY-RATED EMPLOYEES'
PENSION PLAN
(AMENDED AND RESTATED
EFFECTIVE JANUARY 1, 1984)

Effective January 1, 1965, Jeffboat Incorporated, a Delaware corporation with principal offices located at Jeffersonville, Indiana (hereinafter referred to as the "Employer"), adopted the Jeffboat Hourly-Rated Employees' Pension Plan (hereinafter referred to as the "Original Plan") for the benefit of its eligible employees.

Effective January 1, 1976, the Employer amended and restated the Original Plan in its entirety (hereinafter referred to as the "Prior Plan").

Effective January 1, 1984, in order to comply with recent changes in the law and regulations, the Employer, by action of its Board of Directors, desires to amend and restate the Prior Plan as hereinafter set forth (hereinafter referred to as the "Plan").

The purpose of the Plan continues to be to provide for the retirement of employees of the Employer who become Members of the Plan, benefits for Totally and Permanently Disabled Members, and Death Benefits for beneficiaries of deceased Members, but limited to those who qualify herein in accordance with the provisions hereinafter set forth.

It is intended that this Plan, together with the Trust Agreement, meet all of the pertinent requirements of the Internal Revenue Code of 1954, as amended, the Employee Retirement Income Security Act of 1974, and the Tax Equity and Fiscal Responsibility Act of 1982, in order to qualify for certain income tax benefits under said Code and Acts, and the Plan shall be interpreted, wherever possible, to comply with the terms of the Code and Acts and all formal regulations issued thereunder.

# ARTICLE I

## TITLE

Section 1.01  This Plan shall be known as the Jeffboat Hourly-Rated Employees' Pension Plan (hereinafter referred to as the "Plan").

- 1 -

## ARTICLE II

## DEFINITIONS

As used herein, the following words and phrases shall have the meanings specified below, unless a different meaning is plainly required by the context, viz.:

Section 2.01    The term "Accrued Benefit" shall mean, as of any date, the Member's Monthly Retirement Income payable under the basic form at his Normal Retirement Date earned to the date of calculation, calculated pursuant to Section 4.03 based on his Credited Service as of the date of calculation and on the dollar amount (initially six dollars and fifty cents ($6.50)) set forth in Section 4.03 for those who retire on or after the date of calculation.

Section 2.02    The term "Actuarial Equivalent" shall mean a benefit of equivalent value, as certified by the Actuary, when computed on the basis of the factors set forth in Section 4.02, or if none apply on the basis of the following actuarial assumptions:

Interest - 7% per annum, compounded annually,

Mortality - UP-84 Mortality Table set back 1 year.

However, in no event shall the Actuarial Equivalent of a benefit as calculated on August 2, 1983, be less than the Actuarial Equivalent in the same form of the Accrued Benefit as of August 1, 1983 on the basis of this Section as in effect on August 1, 1983.

Section 2.03    The term "Actuarial Value" shall mean the single sum value, as certified by the Actuary, of any income benefit, computed on the basis of the following assumptions:

Interest - 7% per annum, compounded annually,

Mortality - UP-84 Mortality Table set back 1 year.

However, the Actuarial Value of the Accrued Benefit shall not be less than the Actuarial Value of the Accrued Benefit as of August 2, 1983, computed on the basis of the Plan as in effect on August 1, 1983.

Section 2.04    The term "Actuary" shall mean a Fellow of the Society of Actuaries who has been enrolled by the Joint Board for the Enrollment of Actuaries under Section 3042 of the Employee Retirement Income Security Act of 1974, or a firm of actuaries at least one of whose members is a Fellow of the Society of Actuaries who has been so enrolled.  The "Actuary" shall be designated by the Sponsoring Employer.

Section 2.05    The term "Anniversary Date" shall mean January 1 in each calendar year.

- 2 -

Section 2.06    The term "Attained Age" shall mean, unless clearly indicated to the contrary, the age of an Employee or Member as of his last birthday.

Section 2.07    The term "Beneficiary" shall mean any person or persons (or a trust) designated by a Member in such form and manner as the Employer may prescribe to receive a Death Benefit, other than a Death Benefit in the form specified in Section 4.02(b), payable hereunder if such person or persons survive the Member.  This designation may be revoked at any time in similar manner and form.  In the event of the death of the designated Beneficiary prior to the death of the Member, the Contingent Beneficiary shall be entitled to receive the Death Benefit

Section 2.08    The term "Board of Administration" shall mean the Board of Administration as provided in Article VI hereof.

Section 2.09    The term "Board of Directors" shall mean the Board of Directors of the Employer.

Section 2.10    The term "Break in Service" shall only be applicable with regard to an employee (1) whose employment is formally terminated on or after January 1, 1976, (2) whose vested percentage is zero pursuant to Section 5.01 at such time and (3) who is subsequently reemployed.  Such employee shall incur one (1) Break in Service for each Plan Year commencing after such termination date and ending prior to such reemployment date.  In addition, such employee shall incur a Break in Service in the Plan Year in which he formally terminates and a Break in Service in the Plan Year in which he is reemployed if he is credited with less than one hundred (100) Hours of Service in the applicable Plan Year.

Section 2.11    The term "Contingent Beneficiary" shall mean the person or persons (or a trust) duly designated by the Member to receive a Death Benefit from the Plan in the event the designated Beneficiary does not survive the Member.

Section 2.12    The term "Credited Service" shall mean the number of years (and fractions thereof) credited to an Employee for all purposes except vesting under Section 5.01.  Credited Service shall be equal to Service as defined in Section 2.28.

In any event, when an Employee is terminated who is otherwise eligible for benefits under the Plan on the date of such termination, his Credited Service on such date shall be used in the determination of his benefit rights.  Any employee retired under the Total and Permanent Disability provisions of this Plan who is subsequently reemployed by the Employer will have his Credited Service at the time of disability retirement reinstated for the purposes of the Plan.

Section 2.13    The term "Death Benefit" shall mean any benefit paid to a Beneficiary or Contingent Beneficiary or other person at the death of a Member, Disabled Member, or Retired Member, as provided under the terms of the Plan.

- 3 -

Section 2.14   The term "Disability Retirement Date" shall mean the first day of the month coincident with or immediately following the date a Disabled Member becomes eligible for and elects immediate Disability Payments hereunder.

Section 2.15   The term "Disabled Member" shall mean any Member who has been credited with at least eight and one-half (8-1/2) years of Credited Service and is Totally and Permanently Disabled.  The term "Disability Payment" shall mean Monthly Retirement Income due a Disabled Member.

Section 2.16   The term "Early Retirement Date" shall mean, in the case of each Member who has been credited with at least eight and one-half (8-1/2) years of Credited Service and whose Attained Age is at least (i) sixty (60) on or after July 19, 1971 and prior to September 24, 1977, or (ii) fifty-five (55) on or after September 24, 1977, the first day of the month immediately following or coincident with the later of (a) the date such Member shall leave the employ of the Employer in accordance with Section 4.05 hereof, or (b) the date the Member directs in writing shall be his Early Retirement Date.

Section 2.17   The term "Effective Date" shall mean January 1, 1965, the effective date of the Original Plan.  The effective date of this amendment and restatement is January 1, 1984.

Section 2.18   The term "Employee" shall mean any person regularly employed by the Employer on an hourly rated basis (excluding any "leased employee" within the meaning of Section 414(n) of the Internal Revenue Code) who is a member of the collective bargaining unit represented by General Drivers, Warehousemen, and Helpers Local Union No. 89, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America.  For purposes of this Section 2.18, an Employee shall be deemed to be regularly employed on any date if he has completed thirty (30) days of employment for the Employer as of such date.

Section 2.19   The term "Employer" shall mean Jeffboat Incorporated, a Delaware corporation with principal offices located at Jeffersonville, Indiana, its successors and assigns, and any subsidiary or affiliated companies authorized by the Board of Directors of Jeffboat Incorporated to participate in this Plan with respect to their Employees, and subject to the provisions of Article XIV, any corporation into which the Employer may be merged or consolidated or to which all or substantially all of its assets may be transferred.

Section 2.20   The term "Hour of Service" shall mean any hour for which an employee is paid or entitled to payment by the Employer during the Plan Year or other applicable computation period (1) for the performance of duties for the Employer; (2) on account of a period of time during which no duties are performed, regardless of whether the employment relationship has terminated; and (3) as a result of a back pay award which has been agreed to or made by the Employer, irrespective of mitigation of damages, to the extent that such hour has not been previously credited under item (1) or (2) preceding.  The term "Hour of Service" shall also include any hour not credited above for which the Employee receives credit during the Plan Year or other applicable computation period pursuant to Section 2.28(b).

- 4 -

**Section 2.20(a)**   The number of Hours of Service to be credited on account of a period of time during which no duties are performed (including hours resulting from a back pay award) shall be determined as follows.  If the payment which is made or due is calculated on the basis of units of time, the number of Hours of Service to be credited shall be the number of regularly scheduled working hours included in the units of time on the basis of which the payment is calculated; if an employee does not have a regular work schedule, the number of Hours of Service to be credited shall be calculated on the basis of an eight (8) hour work day. If the payment which is made or due is not calculated on the basis of units of time, the number of Hours of Service to be credited shall be calculated by dividing the amount of the payment by the employee's most recent hourly rate of compensation before the period during which no duties were performed, determined as follows:

    (i)   If the employee's compensation is determined on the basis of an hourly rate, such hourly rate shall be the lesser of:

        (1)   the employee's most recent hourly rate of compensation for the performance of duties, or

        (2)   the employee's average hourly rate of compensation for the performance of duties during the most recent Plan Year in which the Employee completed more than five hundred (500) Hours of Service as defined in this Section 2.20, without regard to this Section 2.20(a).

    (ii)  If the employee's compensation is determined on the basis of a fixed rate for a specified period of time other than hours, his hourly rate of compensation shall be his most recent rate of compensation for the specified period of time, divided by the number of hours regularly schedule for the performance of duties during such period of time; if an employee does not have a regular work schedule, his hourly rate of compensation shall be calculated on the basis of an eight (8) hour work day.

   (iii) If the employee's compensation is not determined on the basis of a fixed rate for a specified period of time, his hourly rate of compensation shall be the lowest hourly rate of compensation paid to employees in his job classification, or, if no employees in his job classification have an hourly rate of compensation, the minimum wage in effect under Section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended.

- 5 -

Section 2.20(b)   In no event shall the application of the terms of Section 2.20(a) preceding result in crediting an employee with a number of Hours of Service during the period which is greater than the number of hours regularly scheduled for the performance of duties.  If an employee has no regular work schedule, the number of Hours of Service to be credited to him shall not exceed the number which would be credited calculated on the basis of an eight (8) hour work day.

Section 2.20(c)   The Plan Year or other applicable computation period to which Hours of Service shall be credited shall be determined as follows:

(i)   Except as hereinafter provided, Hours of Service credited in accordance with item (1) of the first paragraph of this Section 2.20 shall be credited in the Plan Year or other applicable computation period in which the duties were performed.

(ii)   Except as hereinafter provided, Hours of Service credited in accordance with item (2) of the first paragraph of this Section 2.20 shall be credited:  if calculated on the basis of units of time, to the Plan Year or Plan Years or other applicable computation periods in which the period during which no duties are performed occurs, beginning with the first unit of time to which the payment relates; otherwise, to the Plan Year or other applicable computation period in which the period during which no duties are performed occurs, provided that if the period during which no duties are performed extends beyond one (1) Plan Year or other applicable computation period, such Hours of Service shall be allocated between not more than the first two (2) Plan Years or other applicable computation periods on any reasonable basis consistently applied.

(iii) Except as hereinafter provided, Hours of Service credited in accordance with item (3) of the first paragraph of this Section 2.20 shall be credited to the Plan Year or other applicable computation period to which the award or agreement for back pay pertains rather than to the Plan Year or other applicable computation in which the award, agreement, or payment is made.

(iv)  Hours of Service to be credited to an employee in connection with a period of no more than thirty-one (31) days which extends beyond one (1) Plan Year or other applicable computation period may be credited to the first or the second Plan Year or other applicable computation period, provided that such crediting is done on a reasonable and nondis-criminatory basis.

- 6 -

Section 2.20(d)    Nothing in this Section 2.20 shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States or any rule or regulation issued under any such law.  The nature and extent of any credit for Hours of Service under this Section 2.20 shall be determined under such law.

Section 2.21    The term "Late Retirement Date" shall mean the first day of any month subsequent to the Member's Normal Retirement Date coincident with or immediately following the date the Member terminates employment with the Employer for any reason other than death.

Section 2.22    The term "Member" shall mean any Employee of the Employer who has become a Member as provided in Article III hereof.

Section 2.23    The term "Monthly Retirement Income" shall mean a monthly income due a Retired Member which shall commence as of his Disability, Early, Normal or Late Retirement Date, or the commencement date of benefit payments under Section 5.01 hereof, and continue for the period indicated in Article IV hereof.

Section 2.24    The term "Normal Retirement Date" shall mean the first day of the month coincident with or immediately following a Member's sixty-second (62nd) birthday.

Section 2.25    The term "Plan Year" shall mean a twelve (12) month period beginning on the first day of January and ending on the last day of December in the same calendar year.

Section 2.26    The term "Prior Plan" shall mean the Jeffboat Hourly-Rated Employees' Pension Plan as constituted on December 31, 1983.

Section 2.27    The term "Retired Member" shall mean any Member of the Plan who has qualified for retirement and who is receiving a Monthly Retirement Income by direction of the Employer.

Section 2.28    The term "Service" shall mean the number of years (and fractions thereof) credited to an Employee for purposes of vesting under Section 5.01.  Service shall be the sum of past Service (if any) and future Service determined as follows:

Section 2.28(a)    An Employee's past Service shall be equal to his number of complete years of seniority at December 31, 1964, as determined in accordance with the basic labor agreement then in effect between the Employer and the Union.

Section 2.28(b)    For each calendar year during the period of time commencing on January 1, 1965, an Employee will be credited with future Service on the basis of the total number of hours during such year for which he was compensated by the Employer.  Prior to calendar year 1974, any year in which the Employee has one thousand six hundred (1600) or more compensated hours shall be counted as one (1) full year.  If the

- 7 -

Employee's total compensated hours during such year number less than one thousand six hundred (1600), credit shall be given at the rate of one-tenth (1/10) of a year for each one hundred sixty (160) compensated hours. For calendar years commencing with 1974, any year in which the Employee has one thousand (1000) or more Hours of Service shall be counted as one (1) full year. If the Employee's total Hours during such year number less than one thousand (1000), credit shall be given at the rate of one-tenth (1/10) of a year for each one hundred (100) Hours of Service. For the purpose of computing future service, the following shall apply:

(i)   hours worked at premium rates shall be computed as straight-time hours;

(ii)   normal working hours lost due to occupational injury or illness up to five (5) years per injury or illness shall count as credited future service with respect to disabilities commencing on or after September 24, 1977; and

(iii)   normal working hours lost by the following union officials in the performance of official union duties shall count as credited future service:

> President
> Vice President
> Financial Secretary
> Recording Secretary
> Treasurer
> Negotiating Committee
> Union Election Committee

Section 2.28(c)   Notwithstanding the above, if an Employee's employment and seniority with the Employer are terminated in accordance with the provisions of the applicable collective bargaining agreement on or after January 1, 1965, but prior to January 1, 1976, such Employee shall not receive Service for periods of employment prior to such termination date.

Section 2.28(d)   Notwithstanding the above, if a Member's employment is terminated on or after January 1, 1976, and the Member is subsequently reemployed and again becomes a Member, his Service shall not include any periods of employment prior to reemployment if (i) said Member's benefit pursuant to Section 5.01 was zero at date of termination and (ii) the Member's consecutive Breaks in Service as of his reemployment date equal or exceed the Member's Service as of his termination date.

Section 2.29   The term "Spouse" shall mean the legally married spouse of the Member at the earlier of the Member's date of death or the date benefits commence to the Member under the Plan.

- 8 -

Section 2.30   The term "Total and Permanent Disability" or "Totally and Permanently Disabled" shall mean that on the basis of medical evidence the Employee is found to be wholly and permanently prevented from engaging in any occupation or employment for wage or profit as a result of bodily injury or disease, either occupational or nonoccupational in cause, but excluding disabilities resulting from:  (1) his employment with anyone or any organization other than the Employer; (2) injury or disease sustained, suffered or incurred by him while serving in the armed forces of any country; (3) injury sustained while engaged in a criminal act or while participating in a criminal enterprise; (4) injury or disease resulting from the excessive use of drugs or intoxicants; (5) intentional self-inflicted injury.

Section 2.31   The term "Trust Agreement" shall mean the agreement entered into between the Employer and the Trustee contemporaneously with the execution of the Plan as it may be subsequently amended.

Section 2.32   The term "Trustee" shall mean the Trustee under the Trust Agreement.

Section 2.33   The term "Trust Fund" shall mean all cash, securities, life insurance and/or annuity contracts, real estate, or any other property held by the Trustee pursuant to the terms of the Trust Agreement, together with income therefrom.

Section 2.34   The term "Union" shall mean the General Drivers Warehousemen and Helpers, Local Union No. 89, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, or its successor.

Section 2.35   Any words herein used in the masculine shall be read and construed in the feminine where they would so apply.  Words in the singular shall be read and construed as though used in the plural in all cases where they would so apply.

- 9 -

## ARTICLE III

### MEMBERSHIP IN THE PENSION PLAN

Section 3.01    Each employee who was covered under the Prior Plan as of December 31, 1983, shall remain covered hereunder as of January 1, 1984, without further action on his part.  On and after January 1, 1984, each employee of the Employer shall become a Member on the date that he becomes an Employee.  A terminated Member who later resumes his employment with the Employer shall become a Member immediately upon his return to the status of an Employee.  Each employee shall be furnished a summary of the Plan when he becomes a Member.

Section 3.02    Upon becoming a Member, a Member shall be bound then and thereafter by the terms of this Plan and the Trust Agreement, including all amendments to the Plan and the Trust Agreement made in the manner herein authorized.

- 10 -

## ARTICLE IV

### MONTHLY RETIREMENT INCOME

**Section 4.01**   Monthly Retirement Income payable under the terms of Article IV shall be subject to the restrictions and limitations of Article IX, Article XI and Article XIV and shall be paid by the Trustee only by or at the direction of the Employer. Neither the Employer nor the Trustee shall be under any obligation to pay any Monthly Retirement Income other than from the Trust Fund.

**Section 4.02**   The basic form of Monthly Retirement Income (to which the formula indicated in Section 4.03 applies) shall be a monthly income commencing on the Member's Disability, Early, Normal or Late Retirement Date or on the date specified in Section 5.01 and continuing for sixty (60) months certain and for his lifetime thereafter. At any time during the "election period" (which shall mean the period beginning two hundred and seventy (270) days immediately prior to the date upon which Monthly Retirement Income is to commence under this Section 4.02 or under Section 5.01 and ending on that date), the Member may elect in a written application provided by the Employer to receive his Monthly Retirement Income as provided in Section 4.02(b), which shall be the Actuarial Equivalent of the Monthly Retirement Income payable as provided in Section 4.02(a) and shall commence as of the Member's Disability, Early, Normal or Late Retirement Date or on the date specified in Section 5.01. Any election under this Section 4.02 may be revoked and a new election made at any time prior to the commencement of benefits.

**Section 4.02(a)**   A monthly income payable under the basic form equal to one hundred percent (100%) of his benefit under Section 4.03.

**Section 4.02(b)**   A monthly income payable for the lifetime of the Member equal to ninety one percent (91%) of the Monthly Retirement Income payable under the basic form, with one-half (1/2) of such amount continuing to the Member's Spouse for the lifetime of said Spouse. In addition, if the difference between the Attained Age of the Member and that of the Spouse exceeds five (5) years, the above percentage shall be increased if the Spouse's age is greater and decreased if the Member's age is greater by forty-five hundredths of one percent (.45%) for each full year by which such difference in Attained Age exceeds five (5) years.

    (i)    Each Member who is married and who is eligible to make an election under this Section 4.02(b) shall, on the first day of the election period, be furnished an explanation of the terms and conditions of the qualified joint and survivor annuity, as specifically applicable to said Member and his Spouse, an explanation of his right to make an election not to have his Benefit distributed in the form of a qualified joint and survivor annuity, and an explanation of the financial effect upon the Member's Benefit (in terms of dollars per annuity payment) of making such election. Such explanation shall be written in a manner intended to be understood by the Member and his Spouse.

- 11 -

(ii)   In the event that (1) no election is effectively made and (2) the Member is married on the date at which his Monthly Retirement Income is to commence, the manner of distribution shall be as provided in this Section 4.02(b). In all other instances where no election is effectively made, benefits shall be paid as provided in Section 4.02(a).

Section 4.02(c)   No option elected will be approved unless distributions will be made over a period which does not exceed the longest of the following:

(i)     the life of the Member,

(ii)    the life of the Member and a designated beneficiary,

(iii)   a period certain not extending beyond the life expectancy of the Member, or

(iv)    a period certain not extending beyond the joint and last survivor expectancy of the Member and a designated beneficiary.

(v)     a combination of the above.

Section 4.02(d)   If the Member's entire interest is to be distributed in other than a lump sum, then the amount to be distributed each year must be at least an amount equal to the quotient obtained by dividing the Member's entire interest by the life expectancy of the Member or joint and last survivor expectancy of the Member and designated beneficiary. Life expectancy and joint and last survivor expectancy are computed by the use of the return multiples contained in Section 1.72-9 of the Income Tax Regulations. For purposes of this computation, a Member's life expectancy may be recalculated no more frequently than annually, however, the life expectancy of a non-spouse beneficiary may not be recalculated.

Upon the death of the Member, the following distribution provisions shall take effect:

(i)     If the Member dies after distribution of his or her interest has commenced, the remaining portion of such interest will continue to be distributed at least as rapidly as under the method of distribution being used prior to the Member's death.

(ii)    If the Member dies before distribution of his or her interest commences, the Member's entire interest will be distributed no later than five (5) years after the Member's death except to the extent that an election is made to receive distributions in accordance with (a) or (b) below:

- 12 -

    (a) if any portion of the Member's interest is payable to a designated Beneficiary, distributions may be made in substantially equal installments over the life or life expectancy of the designated Beneficiary commencing no later than one (1) year after the Member's death;

    (b) if the designated Beneficiary is the Member's surviving Spouse, the date distributions are required to begin in accordance with (a) above shall not be earlier than the date on which the Member would have reached Attained Age seventy and one-half (70-1/2), and, if the Spouse dies before payments begin, subsequent distributions shall be made as if the Spouse had been the Member.

If the Member's designated Beneficiary is other than his Spouse, the Actuarial Value of the benefits payable to the Member shall be more than fifty percent (50%) of the Actuarial Value of the benefits payable to the Member and his Beneficiary or survivor.

Section 4.03    When a Member lives to his Normal Retirement Date, he shall be entitled to retire and to receive a Monthly Retirement Income in an amount calculated by the Actuary and certified to the Trustee by the Employer.  The amount of the Member's Monthly Retirement Income under the basic form and payable on his Normal Retirement Date shall be the dollar amount in effect as of his Normal Retirement Date or date of termination times his years of Credited Service.  On and after October 1, 1978, but prior to March 30, 1981, this amount shall be eight dollars and fifty cents ($8.50). On and after March 30, 1981, but prior to April 2, 1982, this amount shall be nine dollars and fifty cents ($9.50).  On and after April 2, 1982, but prior to April 2, 1983 this amount shall be eleven dollars ($11.00).  On and after April 2, 1983, this amount shall be twelve dollars and fifty cents ($12.50).

Section 4.04    On or after August 2, 1974, and prior to September 24, 1977, a Member may, upon appropriate application to the Employer, continue in employment beyond his Normal Retirement Date, but not later than the later of (i) the date he reaches Attained Age sixty-five (65) and (ii) the date he completes twenty (20) years of Credited Service.  On or after September 24, 1977, a Member may, upon appropriate application to the Employer, continue in employment beyond his Normal Retirement Date, but his Credited Service shall cease to accrue after the later of (i) the date he reaches Attained Age sixty-five (65) and (ii) the date he completes twenty (20) year of Credited Service.  In either event no Monthly Retirement Income shall be paid until the Member's Late Retirement Date.  Upon the Member's actual retirement on his Late Retirement Date, he shall receive a Monthly Retirement Income equal to the dollar amount in effect under Section 4.03 as of the date his Credited Service ceases to accrue times his total Credited Service as calculated hereunder as of his Late Retirement Date.

- 13 -

Notwithstanding the above, if a Member who continues in employment past his Normal Retirement Date does not receive the notice required by Department of Labor Regulation Section 2530.203-3, or did not earn at least forty (40) Hours of Service in each month in such period of continued employment, such Member's Monthly Retirement Income payable on his Late Retirement Date shall be equal to the greater of (i) his Monthly Retirement Income at Normal Retirement Date, actuarially increased to reflect the period of employment between his Normal Retirement Date and his Late Retirement Date, and (ii) his Monthly Retirement Income as of his Late Retirement Date, calculated pursuant to the first paragraph of this Section 4.04.

Section 4.05    Upon written application, a Member whose Attained Age (i) is at least sixty (60) on or after July 19, 1971 and prior to September 24, 1977, or (ii) is at least fifty-five (55) on or after September 24, 1977, and who has been credited with at least eight and one-half (8-1/2) years of Credited Service, may retire as of an Early Retirement Date. Commencing at his Early Retirement Date, such Member shall be entitled to a reduced Monthly Retirement Income which shall be equal to his Accrued Benefit as of his Early Retirement Date reduced actuarially for each month by which his Early Retirement Date precedes his Normal Retirement Date.

A Member who terminates employment for any reason other than Total and Permanent Disability after meeting the requirements of this Section 4.05 and before reaching his Normal Retirement Date will be considered to have retired under Section 4.05.

Section 4.06    If a Member who has completed eight and one-half (8-1/2) years or more of Credited Service shall be determined to be Totally and Permanently Disabled prior to Normal Retirement Date, the Employer shall certify such fact to the Trustee and the Disabled Member shall be retired as of the first day of the month coincident with or immediately following the date of determination. Commencing with the first day of the sixth (6th) month following the date as of which such Total and Permanent Disability is established, the Member shall receive a Monthly Retirement Income, payable under the basic form, of thirteen dollars ($13.00) times his years of Credited Service as of his Disability Retirement Date. Any such Member may be required to submit to medical examination at any time prior to his reaching Attained Age sixty-two (62), but not more often than semiannually, to determine whether such Member is eligible for continuance of the disability pension. If, on the basis of such examination, it is found that the pensioner is no longer disabled, or if the pensioner engages in gainful employment, without the consent of the Employer, his disability pension will cease. In the event the disability pensioner refuses to submit to medical examination, his pension will be discontinued until he submits to such examination. In the event benefits under this Section 4.06 cease, the benefits, if any, to which the said Member becomes entitled pursuant to the other provisions of this Plan shall be reduced by the Actuarial Value of the benefits received pursuant to this Section 4.06.

- 14 -

Section 4.07    The provisions of Section 4.02 concerning the alternate forms of Monthly Retirement Income, Section 6.04, Section 9.04 and Article XI shall apply prospectively to a Member who reached his Normal Retirement Date or terminated with a vested benefit under the Plan prior to January 1, 1984, but who remained employed by the Employer as of January 1, 1984.  In all other respects the provisions of the Plan as it existed on his Normal Retirement Date shall apply.

Section 4.08    A Member who reaches age sixty-two (62) while in the employ of the Employer shall have a non-forfeitable right, upon his actual retirement, to receive a Monthly Retirement Income determined in accordance with Section 4.03 or Section 4.04.

Section 4.09    Unless the Member otherwise elects, any payment of benefits to the Member shall begin not later than sixty (60) days after the close of the Plan Year in which occurs the latest of:

    (i)   the Member's reaching Attained Age sixty-two (62);

    (ii)  the tenth (10th) anniversary of the date the employee became a Member; and

    (iii) termination of Service of the Member.


Benefit payments must commence no later than the April 1st following the calendar year in which the later of

    (i)   termination of employment, or

    (ii)  attainment of age 70 1/2

occurs,  However, benefit payments payable to a 5-percent owner (as described in Section 416(f) of the Code) shall commence no later than the April 1st following the calendar year in which he attains age 70 1/2.

- 15 -

ARTICLE V

OTHER BENEFITS

Section 5.01   When the employment of a Member by the Employer shall terminate for any reason other than death or retirement (including disability retirement and early retirement), either voluntarily or involuntarily, such Member shall cease to be an active Member of the Plan.  Subject to the limitations and restrictions of Article IX, Article XI and Article XIV hereof, a Member (i) who has been credited with ten (10) years or more of Service with the Employer or (ii) who has completed at least eight and one-half (8-1/2) years of Credited Service and has reached Attained Age sixty (60) on or after July 19, 1971, and prior to September 24, 1977 or Attained Age fifty-five (55) on or after September 24, 1977, shall be entitled at Normal Retirement Date to receive a Monthly Retirement Income equal to the amount of his Accrued Benefit at his date of termination.

In lieu of the Monthly Retirement Income payable at Normal Retirement Date provided above, a terminated Member who has been credited with eight and one-half (8-1/2) or more years of Credited Service as of the date of termination shall be entitled at any time after reaching (i) Attained Age sixty (60) on or after July 19, 1971, and prior to September 24, 1977, or (ii) Attained Age fifty-five (55) on or after September 24, 1977, to elect the immediate commencement of benefits hereunder.  Commencing on the first day of the month coincident with or immediately following such election, the terminated Member shall be entitled to a reduced Monthly Retirement Income which shall be equal to this Accrued Benefit as of his date of termination, reduced actuarially for each month by which the commencement date of his benefits under this Section 5.01 precedes his Normal Retirement Date.  Subject to the provisions of Section 4.02, at any time prior to the commencement of his Monthly Retirement Income, a terminated Member may elect to receive his Monthly Retirement Income in an Actuarially Equivalent alternate form permitted by Section 4.02, provided that at any time during the election period and prior to the benefit commencement date, the Member may revoke his election and select another form of benefit distribution.  If a terminated Member upon his date of termination has completed at least eight and one-half (8-1/2) years of Credited Service and has reached attained age sixty (60) on or after July 19, 1971, and prior to September 24, 1977, or attained age fifty-five (55) on or after September 24, 1977, and dies prior to commencement of Benefits, his Spouse shall be entitled to a Death Benefit, provided the Member had been married to such Spouse throughout the one (1) year period ending on his date of death.  Such Death Benefit shall be a monthly income payable for the life of the Spouse, beginning on the first day of the month coincident with or immediately following the death of the terminated Member, equal to the benefit that would have been payable to such Spouse if benefit distribution had commenced under this Section 5.01, on the first day of the month coincident with or immediately following his date of death and he had elected immediate benefits payable in accordance with Section 4.02(b).  Except as otherwise provided in this Section 5.01, in the event a terminated Member dies prior to commencement of benefits, no Death Benefit shall be paid under this Plan.

- 16 -

Section 5.02    If (i) an active Member should die after reaching (a) Attained Age sixty (60) on or after July 19, 1971 and prior to September 24, 1977, or (b) Attained Age fifty-five (55) on or after September 24, 1977, and after completing at least eight and one-half (8-1/2) years of Service, or (ii) if a Disabled Member should die prior to the time benefits commence and after reaching Attained Age fifty-five (55) on or after September 21, 1976, or (iii) if an active Member should die after reaching his Normal Retirement Date, his Spouse shall be entitled to a Death Benefit provided that the Member had been married to such Spouse throughout the one (1) year period ending on his date of death.  Such Death Benefit shall be a monthly income, payable for the life of the Spouse, beginning on the first day of the month coincident with or immediately following the death of the Member, equal to the benefit that would have been payable to such Spouse if the Member had retired pursuant to the appropriate Section of Article IV (but not including Section 4.06) on the first day of the month coincident with or immediately following his date of death and elected immediate benefits payable in accordance with Section 4.02(b).  For purposes of this Section 5.02 only, a benefit payable due to the death of a Disabled Member shall be calculated in accordance with Section 4.05 as if the age requirements were not applicable.

Section 5.03    When a Retired or Disabled Member who is receiving benefits hereunder shall die, his Beneficiary (or Spouse, if Section 4.02(b) applies) shall be entitled to any benefits due under the basic or elected alternate form of payment of his Monthly Retirement Income.  If a Death Benefit is payable under the basic form the Employer may, in its discretion, elect to pay the Beneficiary the Actuarial Value of the outstanding benefits in a single sum.

Section 5.04    If a Death Benefit (other than one arising under Section 4.02(b) or Section 5.02 to a Spouse) is payable under this Article V, and the designated Beneficiary has predeceased the deceased Member, the Death Benefit shall be paid to the Contingent Beneficiary.  If neither the Beneficiary nor the Contingent Beneficiary is living at the death of the Member, or if no Beneficiary or Contingent Beneficiary has been designated, the Employer shall direct the Trustee to pay the Death Benefit to the Member's Spouse, if known and living; if not, equally to the Member's children, if known and living; if none, in a single sum to the estate of the deceased Member.  If the Beneficiary or Contingent Beneficiary is living at the death of the Member, but such person dies prior to receiving the entire Death Benefit, the remaining portion of such Death Benefit shall be paid in a single sum to the estate of such deceased Beneficiary or Contingent Beneficiary.

## ARTICLE VI

### ADMINISTRATION OF THE PLAN

**Section 6.01**   The Employer shall administer the Plan and keep records of individual Member benefits.

**Section 6.02**   The Employer shall direct the Trustee in writing to make payments from the Trust Fund to Members who qualify for such payments hereunder, as certified to it by the Actuary.  Such written order to the Trustee shall specify the name of the Member, his address, his Social Security number, and the amount and frequency of such payments.

**Section 6.03**   The Employer shall not take action or direct the Trustee to take any action with respect to any of the benefits provided hereunder or otherwise in pursuance of the powers conferred herein which would be discriminatory in favor of Members of Employees who are officers, shareholders, or highly-compensated employees, or which would result in benefiting one Member, or group of Members, at the expense of another, or in the application of different rules to substantially similar sets of facts.

**Section 6.04**   Subject to the limitations of the Plan and of the Trust Agreement, the Employer shall from time to time establish rules for the administration of the Plan and transaction of its business.  Without limiting the generality of the above sentence, it is specifically provided that the Employer shall set forth in writing, available for inspection by any interested party, the procedures to be followed in presenting claims for benefits under the Plan.  The Employer shall rely on its records with respect to any and all factual matters dealing with the employment of an employee or Member.  In case of any factual dispute hereunder, the Employer shall resolve such dispute giving due weight to all evidence available to it.  The Employer shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan.  All such determinations shall be final, conclusive and binding except to the extent that they are appealed under the following claims procedure.  In the event that the claim of any person to all or any part of any payment or benefit under this Plan shall be denied, the Employer shall provide to the claimant, within ninety (90) days (or such additional period required by special circumstances, but not to exceed an additional ninety (90) days, provided written notice of the extension shall be furnished to the claimant prior to the commencement of the extension) after receipt of such claim, a written notice setting forth, in a manner calculated to be understood by the claimant: (i)  the specific reason or reasons for the denial; (ii) specific references to the pertinent Plan provisions on which the denial is based;  (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation as to why such material or information is necessary; and (iv) an explanation of the Plan's claim procedure.

Within sixty (60) days after receipt of the above material, the claimant shall have a reasonable opportunity to appeal the claim denial to the Board of

- 18 -

Administration for a full and fair review.  During such period the claimant or his duly authorized representative (i) may request a review upon written notice to the Board of Administration; (ii) may review pertinent documents; and (iii) may submit issues and comments in writing.

A decision by the Board of Administration will be made not later than sixty (60) days (or such additional period required by special circumstances, but not to exceed an additional sixty (60) days, provided written notice of the extension shall be furnished to the claimant prior to the commencement of the extension) after receipt of a request for review.  The Board of Administration's decision on review shall be written and include specific reasons for the decision, written in a manner calculated to be understood by the claimant with specific references to the pertinent Plan provisions on which the decision is based.

Section 6.05   The members of the Board of Administration shall be comprised of two members appointed by the Union and two members appointed by the Employer.  Either the Employer or the Union at any time may remove a member appointed by it and may appoint a member to fill any vacancy among the members appointed by it.  Both the Employer and the Union shall notify each other in writing of the members respectively appointed by them before any such appointment shall be effective.  In attempting to settle a dispute, should there be a deadlock, an impartial chairman shall be selected by mutual agreement of the Employer and the Union to decide the issue.  Members of the Board of Administration shall serve in such capacity without compensation from the fund.

- 19 -

## ARTICLE VII

### CONTRIBUTIONS BY THE EMPLOYER

Section 7.01   It is the intention of the Employer, but it does not guarantee to do so, to deposit with the Trustee from time to time the funds actuarially necessary to provide the benefits under the Plan, in a manner consistent with the funding standards mandated by the Employee Retirement Income Security Act of 1974 and the applicable regulations issued thereunder.

Section 7.02   The Employer will pay, or cause to be paid from the Trust Fund, all expenses of administering this Plan and the Trust as may be mutually agreed upon from time to time.

Section 7.03   The Actuary shall perform periodically an actuarial valuation of the Plan and Trust Fund and shall certify to the Employer in writing the results of the valuation.  The Actuary in his actuarial valuation shall apply all gains arising in the operation of the Plan, including but not necessarily limited to gains resulting from terminations of employment of Members prior to qualifying for benefits hereunder, to reduce the contributions of the Employer pursuant to the funding method and actuarial tables then in use.

Section 7.04   A funding standard account shall be established and maintained so that it may be determined whether or not the Employer has complied with minimum funding standards.

- 20 -

## ARTICLE VIII

### THE TRUST FUND AND TRUSTEE

**Section 8.01**    The Employer has entered into a Trust Agreement with the Trustee to hold the funds necessary to provide the benefits as set forth in the Plan.

**Section 8.02**    The Trust Fund shall be received, held in Trust, and disbursed by the Trustee in accordance with the provisions of the Trust Agreement and the provisions as set forth in this Plan.  No part of the Trust Fund shall be used for or diverted to purposes other than for the exclusive benefit of Members, Retired Members, Disabled Members, Spouses, their Beneficiaries and Contingent Beneficiaries under this Plan, prior to the satisfaction of all liabilities hereunder with respect to them.  No person shall have any interest in or right to the Trust Fund or any part thereof, except as specifically provided for in this Plan or the Trust Agreement.

**Section 8.03**    The Trustee shall at all times be a banking corporation organized and doing business under the laws of the United States of America or any state therein, authorized under such laws to exercise corporate trust powers and subject to supervision or examination by Federal or State authority.  The Board of Directors may remove the Trustee at any time upon the notice required by the terms of the Trust Agreement and, upon such removal or upon the resignation of the Trustee, the Board of Directors shall designate and appoint a successor Trustee.

**Section 8.04**    The Trustee shall have such powers to hold, invest, reinvest, purchase insurance on the lives on Members, control, and disburse funds as at that time shall be set forth in the Trust Agreement.

**Section 8.05**    The Trust Agreement shall be deemed to form a part of the Plan and all right of Members or others under this Plan shall be subject to the provisions of the Trust Agreement to the extent such provisions are not contradicted by specific provisions of this Plan.

**Section 8.06**    The Trust Agreement may contain provisions granting authority to the Employer to settle the accounts of the Trustee on behalf of all persons having or claiming an interest in the Trust Fund.

- 21 -

## ARTICLE IX

### RESERVATION OF RIGHTS BY THE EMPLOYER AND LIMITATIONS ON RIGHTS OF MEMBERS

**Section 9.01**   Although it is the intention of the Employer that this Plan shall be continued and contributions made regularly each year, this Plan is entirely voluntary on the part of the Employer and the continuance of the Plan and payments thereunder are not assumed as a contractual obligation of the Employer. The Employer does not guarantee or promise to pay or cause to be paid any of the benefits provided by this Plan.

**Section 9.02**   The Employer specifically reserves the right, in its sole and uncontrolled discretion and by official and authorized act, to modify, suspend, in whole or in part, at any time or from time to time, and for any period or periods, or to discontinue at any time, the contributions specified in Article VII of this Plan.

**Section 9.03**   This Plan shall not be deemed to constitute a contract between the Employer and any Member or to be a consideration or an inducement for the employment of any Member or employee. Nothing contained in this Plan shall be deemed to give any Member or employee the right to be retained in the service of the Employer or to interfere with the rights of the Employer to discharge any Member or employee at any time regardless of the effect which such discharge shall have upon him as a Member of the Plan.

**Section 9.04**   None of the benefits under the Plan are subject to the claims of creditors of Members, Retired Members, Disabled Members or their beneficiaries and will not be subject to attachment, garnishment or any other legal process. Neither a Member, a Retired Member, a Disabled Member nor his beneficiaries may assign, sell, borrow on or otherwise encumber any of his beneficial interest in this Trust nor shall any such benefits be in any manner liable for or subject to the deeds, contracts, liabilities, engagements, or torts of any Member, Retired Member, Disabled Member or Beneficiary.

**Section 9.05**   It is intended that this Plan shall continue to be approved and qualified by the Internal Revenue Service as meeting the requirements of the Federal Internal Revenue Code and Regulations issued thereunder with respect to Employee's Plans and Trusts (i) so as to permit the Employer to deduct for federal income tax purposes the amounts of its contributions to the Trust; (ii) so that contributions made to the Plan and the income of the Trust Fund will not be taxable to Members as income until received; and (iii) so that the income of the Trust Fund shall be exempt from federal income tax. In the event the Commissioner of Internal Revenue or his delegate rules that the Plan does not meet these criteria, the Employer reserves the right to recover that portion or all of its contribution for which no deduction is allowed, provided such recovery is made within one (1) year of the date the deduction was disallowed. The Employer also reserves the right to recover that portion or all of any contribution made by a mistake of fact, provided such recovery is made within one (1) year of the payment of the contribution to the Trustee.

- 22 -

ARTICLE X

AMENDMENTS

Section 10.01   The Employer reserves the right to amend, modify, suspend or terminate the Plan by action of its Board of Directors; provided, however, that no such action shall alter the Plan or its operation, except as may be required by the Internal Revenue Service for the purpose of meeting the conditions for qualification and tax deduction under Sections 401, 404 and 501(a) of the Internal Revenue Code, in contravention of the provisions of any collective bargaining agreement pertaining to pension benefits as long as such agreement is in effect. Except as provided in Section 11.05, no such action shall operate to recapture for the Employer any contributions previously made to the Trust Fund under the Plan, nor, except to the extent necessary to meet the requirements of the Internal Revenue Service or any other governmental authority, to affect adversely the pensions of Employees already retired or the Trust Fund then securing such pensions.

Section 10.02   No amendment to the plan (including a change in the actuarial basis for determining optional or early retirement benefits) shall be effective to the extent that it has the effect of decreasing a participant's accrued benefit. Notwithstanding the preceding sentence, a participant's accrued benefit may be reduced to the extent permitted under Section 412(c)(8) of the Code. For purposes of this paragraph, a plan amendment which has the effect of (1) eliminating or reducing an early retirement benefit or a retirement-type subsidy, or (2) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. In general, a retirement-type subsidy is a subsidy that continues after retirement, but does not include a qualified disability benefit, a medical benefit, a social security supplement, a death benefit (including life insurance), or a plant shutdown benefit (that does not continue after retirement age). Furthermore, no amendment to the plan shall have the effect of decreasing a participant's vested interest determined without regard to such amendment as of the later of the date such amendment is adopted, or becomes effective.

- 23 -

## ARTICLE XI

### PERMANENT OR TEMPORARY DISCONTINUANCE OF PLAN

Section 11.01    The Employer, by action of its Board of Directors, may suspend the payments to the Trust for any year and may terminate its participation in this Plan at any time.

Section 11.02    If the Employer terminates this Plan or permanently suspends contributions, the Employer shall direct the Actuary to compute the value of benefits held for the benefit of Members, Retired Members, qualified terminated Members, Disabled Members, Spouses, Beneficiaries and Contingent Beneficiaries otherwise eligible to receive benefits hereunder.  The Employer, based upon the certification of the Actuary, shall apportion the amount so valued to all such Members, Retired Members, qualified terminated Members, Disabled Members and/or their Beneficiaries, Contingent Beneficiaries and Spouses in shares as determined in Section 11.03.

Section 11.03    The value of that portion of the Trust Fund remaining after providing for the expenses of administration of the Plan and Trust shall be allocated for purposes of paying Monthly Retirement Income, Disability Payments and Death Benefits in the order of precedence indicated and in the amounts indicated in Section 4044 of the Employee Retirement Income Security Act of 1974 as said Section may be amended, according to the principles set forth in said Section and such other portions of the said Act as it incorporates by reference.  For the purpose of making such allocation any regulations issued pursuant to that Section shall be deemed part of such Section.

The allocation of that portion of the Trust Fund in accordance with this Section 11.03 shall be based on the method of payment of Monthly Retirement Income, Disability Payments or Death Benefits specified in the Plan.  In the event that the Trust Fund assets on or after the date of termination are insufficient to fund all benefits within any class, the benefits of all higher order of precedence shall be funded, the benefits of all lower order of precedence shall be unfunded, and the assets remaining shall be allocated among Members of that class on the basis of their respective actuarial reserves, subject to the provisions of Section 4044 of the Employee Retirement Income Security Act of 1974.

Section 11.04    In the event of failure of the Employer upon termination of this Plan to pay or reimburse the Trustee or the Actuary for the then outstanding charges or expenses incurred hereunder, the Trustee is empowered to satisfy such claims by lien upon the Trust Fund, prior to making any allocation to Members, Retired Members, Disabled Members, Beneficiaries, Spouses, and Contingent Beneficiaries of the Plan in accordance with Section 11.02 and Section 11.03 hereof.

Section 11.05    The application of the Trust Fund on the foregoing basis shall be calculated by the Actuary and certified to the Trustee by the Employer as of the date on which the Plan terminated.  Subject to the restrictions of the Employee Retirement Income Security Act of 1974, as it may be amended, when the calculations shall be completed, the interest of each

- 24 -

Member, qualified terminated Member, Retired Member, Disabled Member, Beneficiary, Spouse, and Contingent Beneficiary shall continue to be held in the Trust Fund pursuant to the terms of Section 11.03 hereof, or, at the direction of the Employer, the Trust Fund shall be liquidated and each of their interests distributed to them in the form of annuity contracts, annuity payments, installments or in a lump sum as determined by the Employer; provided, however, that subject to the limitations contained in Section 4044(d) of the Employee Retirement Income Security Act of 1974, any funds remaining after the satisfaction of all liabilities to Members, qualified terminated Members, Retired Members, Disabled Members, Beneficiaries, Spouses, and Contingent Beneficiaries under this Plan due to erroneous actuarial computation shall be returned to the Employer.

Section 11.06    Notwithstanding any other provision herein contained, should the plan terminate or partially terminate, the rights of all affected Members to benefits accrued to the date of such termination or partial termination, to the extent then funded, or the amounts credited to the Member's accounts, are non-forfeitable.  A partial termination shall be deemed to have occurred in accordance with a determination to that effect by the Federal regulatory agency (the Treasury Department, the Labor Department, or the Pension Benefit Guaranty Corporation) having jurisdiction to so determine under the Employee Retirement Income Security Act of 1974.

- 25 -

# ARTICLE XII

## ACTUARY

Section 12.01    The Actuary shall make all actuarial calculations and perform all duties required of him hereunder.  In making an actuarial valuation of the Plan and Trust from time to time, the Actuary may rely upon the written statement of the Trustee concerning the assets in the Trust and shall not be required to make any independent calculations with respect thereto.  The Actuary shall certify to the Employer in writing the results of the calculations required of him hereunder and the Employer may rely thereon. In making all funding calculations hereunder, the Actuary shall use such actuarial tables as he deems appropriate but he shall use the same tables in making all his calculations during a specified period.  The Actuary shall employ actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the Plan and reasonable expectation) and which, in combination, offer the Actuary's best estimate of anticipated experience under the Plan.  The Actuary may from time to time change the actuarial tables and other assumptions used by him hereunder.

Section 12.02    The Employer shall furnish the Actuary such information on employees, payrolls, and other related data as the Actuary may require from time to time.

Section 12.03    The Actuary may rely upon any information furnished him by the Employer.

- 26 -

## ARTICLE XIII

### CHANGE IN EMPLOYMENT

**Section 13.01**    A Member who without a break in his Service becomes employed by another employer which is a subsidiary or affiliate of the Employer shall remain covered by this Plan until the December 31 immediately following such transfer of employment. Effective as of the January 1 coincident with or immediately following such transfer of employment, such Member shall become a limited Member hereunder and Section 5.01 shall not be applicable. At the time that such a transferred former Member ceases to be employed by such other employer, he shall be entitled to such benefits under the Plan (and only such benefits) as are provided under Article IV or Article V hereof, whichever is applicable, for a Member whose employment by an Employer is terminated. Prior to that time, the provisions of Article IV and Article V hereof shall be suspended with respect to such transferred former Member. As a limited Member and so long as he remains in the employ of such a other employer, he shall continue to earn Service for the purpose of determining eligibility for benefits. However, no Credited Service shall be granted for the period of his limited membership and if such limited Member terminates employment without ever again becoming a Member of this Plan, his benefits, if any, will be determined on the basis of his Credited Service accrued as of his date of transfer and the benefit level in effect at the time of his termination of employment.

**Section 13.02**    An Employee who transfers employment from an employer which is a subsidiary or affiliate of the Employer to the Employer shall, for purposes of vesting, but not for purposes of benefit accrual, receive Hours of Service for his prior periods of employment with such affiliated or subsidiary employer.

**Section 13.03**    A limited Member of this Plan under Section 13.01 who returns to the employ of the Employer and the status of Employee hereunder shall again become a full Member herein on the date of such transfer. A Member of this Plan who is subject to the terms of this Section 13.03 shall be entitled to benefits equal to those retained as a limited Member plus such additional benefits as he might earn as a full Member hereunder.

**Section 13.04**    If a Member's employment status is changed so that he is no longer an Employee as defined hereunder but remains an employee of the Employer, he shall cease to accrue Credited Service and his benefits, if any, hereunder shall be calculated as of his date of severance of employment for any reason based on his Attained Age and Service (including Service after change in status) as of his date of severance.

**Section 13.05**    If an employee of the Employer becomes an Employee as defined hereunder due to a change in employment status, he shall become a Member hereof. Such Member shall not receive Credited Service for any period of employment prior to the date of such change in status but shall receive Service for such period of employment.

ARTICLE XIV

MISCELLANEOUS

Section 14.01   Any rules, regulations, or procedures that may be necessary for the proper administration or functioning of this Plan that are not covered in this Plan or the Trust Agreement shall be promulgated and adopted by the Employer.

Section 14.02   Any headings or subheadings in this Plan are inserted for convenience of reference only and are to be ignored in the construction of any provisions hereof.

Section 14.03   This Plan shall be construed in accordance with the laws of the State of Indiana, except where such laws are superseded by the Employee Retirement Income Security Act of 1974, in which case such Act shall control.

Section 14.04   In making any distribution to or for the benefit of any minor or incompetent Beneficiary, the Employer, in its sole, absolute and uncontrolled discretion, may, but need not, order the Trustee to make such distribution to a legal or natural guardian or other relative of such minor or court appointed committee of such incompetent, or to any adult with whom such minor or incompetent temporarily or permanently resides, and any such guardian, committee, relative or other person shall have full authority and discretion to expend such distribution for the use and benefit of such minor or incompetent.  The receipt of such guardian, committee, relative or other person shall be a complete discharge to the Trustee, without any responsibility on its part or on the part of the Employer to see to the application thereof.

Section 14.05   An executed copy of this Plan shall be furnished the Trustee.  An executed copy of this Plan and of the Trust Agreement shall be furnished the Actuary.

Section 14.06   In case any provision of this Plan shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining parts of this Plan and this Plan shall be construed and enforced as if such illegal and invalid provisions had never been inserted herein.

Section 14.07   For purposes of Part 4 of Title I of the Employee Retirement Income Security Act of 1974, the Employer, the Trustee and those parties to whom any duties are allocated pursuant to Section 5.21 of the Trust Agreement, as such provision may hereafter be amended, shall each be named fiduciaries.  All actions by named fiduciaries shall be in accordance with the terms of this Plan and of the Trust insofar as such documents are consistent with the provisions of Title I of the Employee Retirement Income Security Act of 1974.  Each named fiduciary while discharging his duties under this Plan shall act solely in the interest of Members and Beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable administrative expenses.  Each named fiduciary shall discharge his duties hereunder with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and

- 28 -

with like aims.  Without limiting the generality of the above, it is specifically provided that the appointment and retention of the members of the Board of Administration or of any parties pursuant to Section 5.21 of the Trust Agreement are duties of the Employer, the Union and/or the Trustee (whichever is appropriate) for purposes of this Section 14.07.

Section 14.08   The Employer shall be responsible for the administration and management of the Plan except for those duties hereinafter specifically allocated to the Trustee, the Union or the Board of Administration.  The Trustee shall have exclusive responsibility for the management and control of the assets of the Plan, except to the extent an investment manager is appointed pursuant to Section 5.21 of the Trust Agreement.  The Board of Administration shall have exclusive responsibility for all matters specifically delegated to it in this Plan.  Each fiduciary shall be responsible only for the specific duties assigned above and shall not be directly or indirectly responsible for the duties assigned to another fiduciary.  The Employer shall be deemed the administrator for purposes of the Employee Retirement Income Security Act of 1974.

Section 14.09   A misstatement in the age, sex, length of Service, date of employment or birth, or compensation of a Member, or any other such matter, shall be corrected when it becomes known as any such misstatement of fact has occurred.

Section 14.10   In the event of a merger or consolidation of the Employer or transfer of all or substantially all of its assets to any other corporation, partnership or association, provision may be made by such successor corporation, partnership or association at its election for the continuance of this agreement and the retirement plan created hereunder by such successor entity.  Such successor shall, upon its election to continue this Plan, be substituted in place of the Employer by an instrument duly authorizing such substitution and duly executed by the Employer and its successor.  Upon notice of such substitution accompanied by a certified copy of the resolutions of the Board of Directors of the Employer and its successor, authorizing such substitution and delivered to the Trustee, the Trustee and all Members hereunder shall be authorized to recognize such successor in the place of the Employer.

Section 14.11   The total annual benefit (as defined hereinafter) of any Member shall not exceed the limitations set forth in this Section 14.11 and its subsections.

Section 14.11(a)   For purposes of this Section 14.11, the term 'annual benefit' means a benefit payable in the form of a straight life annuity with no ancillary benefits, under a plan to which employees do not contribute and under which no rollover contributions (as defined in Sections 402(a)(5), 403(a)(4), 408(d)(3) and 409(b)(3)(C) of the Internal Revenue Code) are made.

- 29 -

**Section 14.11(b)**  The total annual benefit shall not exceed the lesser of (i) ninety thousand dollars ($90,000) or the specific amount, determined by the Commissioner of Internal Revenue as of January 1 of each calendar year, beginning with calendar year 1988, to apply to the Limitation Year ending with or within that calendar year, or (ii) one hundred percent (100%) of the Member's average compensation for his high three (3) years (as defined in Section 14.11(e)).

**Section 14.11(c)**  When retirement benefits under this Plan are payable in any form other than the form described in Section 14.11(a) or if the Members contribute to the Plan or make rollover contributions, the determination as to whether the limitation described in this Section 14.11 has been satisfied shall be made, in accordance with regulations prescribed by the Secretary of the Treasury or his delegate, by adjusting such benefit so that it is equivalent to the benefit described in Section 14.11(a), provided that the interest rate used to determine such equivalent shall be equal to the greater of:

(i)   five percent (5%); or

(ii)  the interest assumption specified in Section 2.02 or 2.03, whichever is applicable.

For purposes of this Section 14.11(c), any ancillary benefit which is not directly related to retirement income benefits shall not be taken into account; and that portion of any joint and survivor annuity which constitutes a qualified joint and survivor annuity (as defined in Section 401(a)(11)(G)(iii) of the Internal Revenue Code) shall not be taken into account.

**Section 14.11(d)**  If the retirement income benefit under this Plan begins before Attained Age sixty-two (62), the determination as to whether the dollar limitation set forth in Section 14.11(b)(i) has been satisfied shall be made, in accordance with regulations prescribed by the Secretary of the Treasury or his delegate, by reducing the dollar limitation so that such limitation (as so reduced) equals an annual benefit (beginning when such retirement income benefit begins) which is equivalent to a ninety thousand dollar ($90,000) annual benefit beginning at Attained Age sixty-two (62), provided that the interest assumption used to determine such equivalent shall be equal to the applicable assumption as stated in Section 14.11(c).  The reductions required by this paragraph shall in no event reduce the annual limitation in Section 14.11(b)(i) below:

(i)   Seventy-five thousand dollars ($75,000), if the benefit begins on or after the Member's attainment of Attained Age fifty-five (55); or

(ii)  the Actuarial Equivalent of the seventy-five thousand dollar ($75,000) annual benefit at Attained Age fifty-five (55), if the benefit begins prior to such age.

**Section 14.11(e)**  For purposes of this Section 14.11, a Member's high three (3) years shall be the period of consecutive calendar

- 30 -

years (not more than three (3)) during which the Member both was an active Member in the Plan and had the greatest aggregate compensation from the Employer.  In the case of a Member who is an 'employee' within the meaning of Section 401(c)(1) of the Internal Revenue Code, the preceding sentence shall be applied by substituting 'the Member's earned income (within the meaning of Section 401(c)(2) of the Internal Revenue Code but determined without regard to any exclusion under Section 911 of the Internal Revenue Code)' for 'compensation from the Employer.'

For purposes of this Section 14.11, "compensation" means a Member's earned income, wages, salaries, and fees for professional services, and other amounts received for personal services actually rendered in the course of employment with his Employer (including, but not limited to bonuses), and excluding the following:

(a)   Employer contributions to a plan of deferred compensation which are not included in the Member's gross income for the taxable year in which contributed or employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the Member, or any distributions from a plan of deferred compensation;

(b)   Amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the Member either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(c)   Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(d)   Other amounts which received special tax benefits.

Compensation for any calendar year is the compensation actually paid or includible in gross income during such year.

Section 14.11(f)   Notwithstanding the preceding provisions of this Section 14.11, the benefits payable with respect to a Member under this Plan shall be deemed not to exceed the limitation of this Section 14.11 if:

(i)   the retirement benefits payable with respect to such Member under this Plan and under all other 'qualified' defined benefit pension plans to which the Employer contributes do not exceed ten thousand dollars ($10,000) for the applicable Limitation Year and for any prior Limitation Year; and

(ii)   the Employer has not at any time maintained a 'qualified' defined contribution pension plan in which the Member participated.

- 31 -

Section 14.11(g)  In the case of an Employee who has fewer than ten (10) years of Service, the limitation referred to in Section 14.11(b) (or in Section 14.11(f), if applicable) shall be multiplied by a fraction, the numerator of which is the number of years (or part thereof) of Service with the Employers and the denominator of which is ten (10).

Section 14.11(h)  In the case of a Member who is separated from service with his Employers, the one hundred percent (100%) limitation of Section 14.11(b)(ii) shall be automatically adjusted to reflect any regulations issued by the Secretary of the Treasury pursuant to Section 415(d) of the Internal Revenue Code, concerning cost-of-living adjustments.

Section 14.11(i)   If the retirement income benefit under this Plan begins after Attained Age sixty-five (65), the determination as to whether the dollar limitation set forth in Section 14.11(b)(i) has been satisfied shall be made, in accordance with regulations prescribed by the Secretary of the Treasury, by increasing the dollar limitation so that such limitation (as so increased) equals an annual benefit (beginning when such retirement income benefit begins) which is equivalent to a ninety thousand dollar ($90,000) annual benefit beginning at Attained Age sixty-five (65), provided that the interest rate used to determine such equivalent shall be equal to five percent (5%).

Section 14.12  If a Member is a participant in one or more Defined Benefit Plans and one or more Defined Contribution Plans maintained by the Employer, the sum of his Defined Benefit Plan Fraction and his Defined Contribution Plan Fraction shall not exceed 1.0 during any Limitation Year.

If the sum of the defined benefit plan fraction and the defined contribution plan fraction would exceed 1.0 for any Limitation Year, the Employer shall adjust the rate of benefit accrual for purposes of a Defined Benefit Plan or the amount of 'annual additions' (as defined in Section 415(c)(2) of the Internal Revenue Code) to a Defined Contribution Plan on behalf of any Member so that the sum of such fractions shall not exceed 1.0.

For purposes of determining maximum annual additions to Defined Contribution Plans and maximum annual benefits payable from Defined Benefit Plans, all Defined Contribution Plans and all Defined Benefit Plans, whether or not terminated, shall be combined and treated as one plan.

Section 14.12(a)  The term 'defined benefit plan fraction' shall mean a fraction, the numerator of which is the Member's projected annual benefit (as defined in the said Defined Benefit Plan) determined as of the close of the Plan Year, and the denominator of which is the lesser of:

    (i)  the product of 1.25 multiplied by the dollar limitation described in (b)(i) of the preceding Section for such Plan Year; or

- 32 -

(ii)  the product of 1.4 multiplied by the amount, described in
      (b)(ii) of the preceding Section, which may be taken into
      account with respect to each individual under the Plan for
      such Plan Year.

Section 14.12(b)  The term 'defined contribution plan fraction' shall
mean a fraction, the numerator of which is the sum of all of the annual
additions to the Member's individual account under the Defined
Contribution Plan as of the close of the Limitation Year and the
denominator of which is the sum of the lesser of the following amounts
determined for such Plan Year and for each prior Plan Year of employment
with the Employer:

(i)   the product of 1.25 multiplied by the dollar limitation in
      effect in Internal Revenue Code Section 415(c)(1)(A) for such
      Plan Year;

(ii)  the product of 1.4 multiplied by the amount which may be
      taken into account pursuant to Internal Revenue Code Section
      415(c)(1)(B) with respect to each individual under the
      Defined Contribution Plan for such Plan Year.

The limitation on aggregate benefits from a Defined Benefit Plan
and a Defined Contribution Plan which is contained in Section 2004
of the Employee Retirement Income Security Act of 1974 as amended
shall be complied with by a reduction (if necessary) in the
Member's benefits under this Defined Benefit Plan before a
reduction in annual additions to any Defined Contribution Plan.

Section 14.13   In the event that as of any Anniversary Date corrective
adjustments are required pursuant to Section 14.11 or Section 14.11,
the Member's annual benefit shall be reduced by an amount, determined by the
Actuary, adequate to insure compliance with Section 14.11 and Section 14.11.

Section 14.14   In the case of any merger or consolidation with or
transfer of assets or liabilities of the Plan to any other plan, such merger,
transfer or consolidation shall by its terms provide that each Member of the
Plan would, if the Plan then terminated, receive a benefit immediately after
the merger, consolidation, or transfer which is equal to or greater than the
benefit he would have been entitled to receive immediately before the merger,
consolidation, or transfer if this Plan had then terminated.

Section 14.15   The Employer shall not be entitled to any part of the
corpus or income of the Trust Fund and no part thereof shall be used for or
diverted to purposes other than for the exclusive benefit of the Members and
Beneficiaries hereunder, except as provided in Section 11.05 herein at the
time of termination of the Plan and Trust.  Notwithstanding the above, the
Trust Fund may be used to pay the expenses of the Plan or Trust Fund.

Section 14.16   Any benefits payable to, or on behalf of, a Member or
former Member which are not claimed shall be forfeited as provided in the Plan
only if the beneficiary cannot be located after reasonable efforts at the time
of termination of the Plan.  If the Member or beneficiary shall later appear
to claim his benefits, such forfeited benefits shall be restored to him.  Such

- 33 -

restoration of a forfeiture will come from forfeitures in the year in which the Member or beneficiary appears and, to the extent such forfeitures are not sufficient, from a special Employer contribution.

Section 14.17    Notwithstanding any other provision of this Plan to the contrary except Section 5.06, benefit payments shall not commence until the first day of the month following the cessation of any weekly sickness or accident benefits payable to the Employee under any plan or program to which the Employer has contributed.

Section 14.18    If an Employee who is receiving benefits under this Plan shall be reemployed by the Employer, he shall cease to receive benefits hereunder and shall accrue additional Credited Service as a result of such employment.  When such Employee leaves the employ of the Employer, the monthly pension benefits of such Employee shall be recalculated, subject to Section 4.04, based on the Employee's Credited Service and Attained Age as of such date and on the dollar amount applicable as of such date pursuant to Section 4.03.  The foregoing is not applicable to a disability pensioner who recovers and returns to work, specific provision for whom is made in Section 2.12 and Section 4.06.

Section 14.19    The Employer's rights to discipline or discharge Employees in accordance with the applicable labor agreement shall not be affected by reason of any of the provisions of the Plan.

Section 14.20    The Union shall annually be furnished with a certification from the Actuary that sufficient contributions have been made to the fund to maintain actuarial solvency.

Section 14.21    The Employer shall have all such powers as may be necessary to carry out the provisions of the Plan except as the powers and duties of the Employer may be modified by any collective bargaining agreement.

Section 14.22    Notwithstanding anything in Section 14.11 or 14.12 to the contrary a Member's Accrued Benefit under this Plan as in effect on December 31, 1982 shall not be reduced by the changes made to those Sections effective January 1, 1983.

- 34 -

## SIGNATURES

IN WITNESS WHEREOF, the Employer has caused the Plan to be executed
this _28th_ day of _January_ , 1986, but to be effective January 1,
1985.

Attest:  (SEAL)                           JEFFBOAT INCORPORATED

_Michael L Harris_                   BY _Robert W. Greene III_

EXHIBIT 2



## American Commercial Lines Holdings LLC

Robert G. Burns
General Counsel
and Secretary

April 12, 2000

*10/10/2013 Mailed a copy*
*to Aaron Moore P.O. Box 4082.*
*JEFFERSONVILLE, IN 47131*

**VIA FACSIMILE: 366-2009**
**AND U.S. MAIL**

Mr. Jeff Cooper
Teamsters Local 89
3813 Taylor Blvd.
Louisville, KY 40215

      **RE:   Aaron K. Moore**

Dear Mr. Cooper:

      This will respond to your recent inquiry regarding Aaron K. Moore's request for a disability pension or related benefits. Mr. Moore worked for Jeffboat for half of a year in 1972, and then sporadically between 1978 and 1984. During this time Jeffboat provided retirement and disability retirement benefits to its employees under the Jeffboat Hourly-Rated Employees' Pension Plan (the "Plan"). The Plan in effect while Mr. Moore worked for Jeffboat differs from the Pension Plan which is in effect today.

      Under the terms of the old Plan, to qualify for disability retirement benefits, an employee must have been (i) vested in the Plan  when the disability begins; (ii) actively employed by Jeffboat when the disability commenced; **and** (iii) disabled, as defined in the Plan. Vesting requires 8.5 years of credited service. An employee must meet **all** three of these criteria to be eligible to receive any disability retirement benefit.

      When Mr. Moore left Jeffboat in 1984 he had 4.1 years of credited service. Vesting requires 8.5 years of credited service. Mr. Moore simply did not have sufficient credited service to be vested in the Plan. Moreover, Mr. Moore last worked for Jeffboat in 1984. According to the attorney who represented Mr. Moore with regard to this matter, his disability occurred in 1988. Accordingly, Mr. Moore also fails the second requirement of the Plan because he was not actively employed by Jeffboat when the disability occurred.

      For these reasons, Mr. Moore has consistently been denied disability retirement benefits by the Plan. In 1994, Mr. Moore retained a local attorney to assist him with his quest for benefits. On September 8, 1994, the Plan made a formal determination of benefits denying Mr. Moore's claim. Under the terms of the Plan, he had 60 days from the date of the denial to appeal the determination. Neither Mr. Moore nor his counsel

APR 1 3 2000

Mr. Jeff Cooper
April 12, 2000
Page 2 of 2

made any appeal. Pursuant to ERISA, his right to bring any further action would be barred because of this failure to appeal in a timely manner, and exhaust his administrative remedies.

To qualify for any regular retirement pension benefit, Mr. Moore would also have to be vested in the Plan. Because he only has 4.1 years of credited service, he is not vested in the Plan, which, again, requires 8.5 years of credited service for vesting purposes. Accordingly, he is not entitled to any regular retirement pension benefits under the Plan.

I trust this adequately addresses your inquiry. Please contact me if you have any additional questions.

Yours very truly,

Robert G. Burns

cc:    Paul S. Besson
       Susan K. Miller
       William Pop